**UNITED STATES, Appellant,**

v.

**John Lewis BURRELL, Appellee.**

No. 5923.

District of Columbia Court of Appeals.

March 2, 1972.

Before HOOD, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, PAIR, REILLY and YEAGLEY, Associate Judges.

## ORDER

On consideration of appellee's petition for rehearing *in banc*, it is

Ordered by the court *in banc* that appellee's aforesaid petition is denied.

GALLAGHER, J., would grant appellee's petition for the reasons set forth in his dissenting opinion filed on January 31, 1972.

FICKLING and KERN, JJ., would grant rehearing *in banc* for the reasons set forth in the attached statement.

Statement of KERN, Associate Judge, Concurred in by FICKLING, Associate Judge, in Support of His Vote to have the Court Rehear this Case In Banc

The majority hold that no seizure within the meaning and protection of the Fourth Amendment took place in this case when a uniformed police officer placed his hand on the arm of a citizen at the corner of 13th and F Streets and ordered him to "hold it" for questioning because the officer believed there was "something wrong" about what that particular citizen was doing.[1]

The holding is contrary to the plain language of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),[2] is inconsistent with our very recent decision in Robinson v. United States, D.C.App., 278 A.2d 458 (1971), and leaves the trial bench and bar and the police uncertain as to what is proper in on-the-street questioning of a citizen by a policeman, which confrontations are of such grave concern to the entire community.[3]

Our Rule 40(c) prescribes an *in banc* rehearing "(1) when consideration by the full court is necessary . . . to maintain uniformity of its decisions, *or* . . . (2) when the proceedings involve a question of exceptional importance." (Emphasis added.) I would rehear *in banc* this case because it meets *both* these conditions.

1. The officer had had no report of a crime being committed in the area and had never before seen appellant. The officer could only say, after observing appellant (who was standing at a bus stop) "nervously" rub his face, stare back at the officer in response to the officer's stares at him, and finally walk away from the officer up 13th to G and then back down 13th to F, that, "[I]t just seemed that something was wrong."

2. The Supreme Court said in *Terry* (at 16, 88 S.Ct. at 1877):
It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person. *See* Gomez v. Wilson, 323 F.Supp. 87, 91 (D.D.C.1971) (Curran, C. J.):
"[W]hen a policeman stops and questions a person on the street, that person to a degree is restrained . . . that person has been seized within the scope of the Fourth Amendment.

3. We now have reversed the trial court three times during the past year in cases involving an on-the-street stop of a citizen whom a police officer suspected and wished to question, and we have yet to formulate any guidelines for the trial judges in these situations. United States v. Lee, D.C.App., 271 A.2d 566 (1970); Robinson v. United States, D.C.App., 278 A.2d 458 (1971); United States v. Burrell, D.C.App., 286 A.2d 845 (decided Jan. 31, 1972).