*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

### DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0044

LEROY WILLIAMS, APPELLANT,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF GENERAL SERVICES, *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-004491-P(MPA))

(Hon. Maurice Ross, Trial Judge)

(Submitted September 25, 2024          Decided November 7, 2024)

*Leroy Williams*, pro se. *Marc L. Wilhite* was on the reply brief for appellant.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Alex Fumelli*, Assistant Attorney General, were on the brief for appellee District of Columbia Department of General Services.

*Bruce A. Frederickson* and *Geoffrey H. Simpson* were on the brief for appellee Public Employee Relations Board.

Before EASTERLY, MCLEESE, and SHANKER, *Associate Judges*.

EASTERLY, *Associate Judge*: The Public Employee Relations Board ("PERB")

denied a request from the Fraternal Order of Police ("FOP") to review an arbitration

award terminating Leroy Williams's employment with the D.C. Department of General Services ("DGS").  FOP sought review from the Superior Court, which affirmed PERB's order; Mr. Williams now seeks review from this court.  Because FOP's collective bargaining agreement gives the union the sole authority to arbitrate grievances, we hold that Mr. Williams lacks standing and dismiss his appeal.

## I.      Facts and Procedural History

Mr. Williams worked as a special police officer with the mobile patrol unit of DGS's Protective Services Division.  In August 2019, DGS provided Mr. Williams with a final Notice of Separation, terminating him for conduct related to two unauthorized traffic stops the previous March.  The notice presented Mr. Williams with three options to appeal the agency's decision: (1) personally "filing an appeal with the Office of Employee Appeals"; (2) having his union, FOP "fil[e] a grievance pursuant to the negotiated agreement between" DGS and FOP; or (3) personally "filing a grievance pursuant to Chapter 16 of the DC personnel regulations." Mr. Williams chose the second option, and the following month FOP filed a grievance on his behalf.  When FOP and DGS were unable to settle the grievance following the steps set forth in the collective bargaining agreement, FOP decided to advance the grievance to arbitration, again per the terms of its collective bargaining agreement.  The arbitrator issued an award denying Mr. Williams's grievance in full,

concluding that DGS had just cause to remove Mr. Williams and had followed all applicable laws, rules, and regulations in doing so.

FOP then filed an arbitration review request with PERB, which found "no cause to modify, set aside, or remand the [a]ward" of the arbitrator, followed by a petition for review with the Superior Court, which affirmed PERB's decision. After counsel for FOP withdrew from the proceeding, Mr. Williams timely appealed the Superior Court's decision himself. Mr. Williams, proceeding without an attorney, filed an opening brief; his reply brief was filed by counsel, who entered their appearance as "counsel for the Appellant Leroy Williams."

## II.    Discussion

Before we can reach the merits of this appeal, we must first address a threshold jurisdictional question, namely, whether Mr. Williams has standing to bring this appeal. *Grayson v. AT&T Corp.*, 15 A.3d 219, 229 (D.C. 2011) (en banc) ("Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)); *see also Fraternal Ord. of Police Metro. Police Dep't Lab. Comm. v. District of Columbia*, 290 A.3d 29, 36-37 (D.C. 2023) (explaining that this court "generally adhere[s] to the case and controversy requirement of Article III as well as prudential principles of standing"). Because we

conclude that Mr. Williams does not have standing to pursue this appeal, we must dismiss this case without reaching his merits arguments.

DGS argues that Mr. Williams lacks standing because, inter alia, "[o]nly the Union had standing to seek, or obtain review of, an arbitration award." We agree. As a general matter, "an individual employee lacks direct control over a union's actions taken on his behalf." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 567 (1990). And in the context of workplace disputes, "the union typically has broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Id.* at 567-68; *see, e.g.*, *Pitt v. D.C. Dep't of Corrs.*, 954 A.2d 978, 985 (D.C. 2008) ("[I]f a union is unwilling to take an employee's grievance to arbitration, the employee's only remedy at that point is a complaint against the union filed with [PERB], requesting an order compelling the union to arbitrate." (alterations omitted) (quoting *Bd. of Trs., Univ. of D.C. v. Myers,* 652 A.2d 642, 646 (D.C. 1995))). Vesting control of the grievance process in the union serves the interests of both unions and employers. "Such activity [prosecuting employees' grievances] complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. . . . Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965). Here the collective bargaining agreement

expressly provides that "[o]nly the [u]nion may advance a grievance to arbitration," and it follows that only the union was empowered to appeal an adverse arbitration ruling to this court.

This court has not previously had opportunity to address whether an individual employee has standing to appeal an arbitration award when the collective bargaining agreement grants the union, not the employee, the exclusive right to advance a grievance to arbitration. A review of other jurisdictions, however, shows a uniform line of decisions disallowing individual appeals unless the collective bargaining agreement expressly authorizes individual employees to arbitrate or the union is found to have breached its duty of fair representation. *See, e.g.*, *Anderson v. Norfolk & W. Ry.*, 773 F.2d 880, 882 (7th Cir. 1985) (compiling federal court cases holding that "individual employees have no standing to challenge an arbitration proceeding to which the Union and the employer were the sole parties"); *Miles v. FOP Lodge #5*, 217 A.3d 892, 898 (Pa. 2019) ("As a general principle, a union, not its individual members, controls the appeal of an arbitration award."); *Leon v. Boardman Twp.*, 800 N.E.2d 12, 16 (Ohio 2003) ("[W]hen an employee's discharge or grievance is arbitrated between an employer and a union under the terms of a collective bargaining agreement, the aggrieved employee does not have standing to petition a court to vacate the award . . . unless the collective bargaining agreement expressly gives the employee an independent right to submit disputes to arbitration.");

*Stahulak v. City of Chicago*, 703 N.E.2d 44, 48 (Ill. 1998) ("[I]ndividual employees represented by a union should only be allowed to seek judicial review of an arbitration award if they can show that their union breached its duty of fair representation."); *Eisen v. Dep't of Pub. Welfare*, 352 N.W.2d 731, 736 (Minn. 1984) ("[U]nless the collective bargaining agreement provides otherwise, an individual employee may not appeal an unfavorable award where the union expressly determines not to appeal."); *cf. Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) (noting that the Federal Arbitration Act "has been strictly interpreted by the courts to prohibit an employee who was not a party to the arbitration from appealing the results of the arbitration between the employee's union and employer").

We now similarly conclude that in this jurisdiction, where a collective bargaining agreement grants only the union the authority to advance a grievance to arbitration, only the union has the corresponding standing to appeal an adverse decision (unless the union breached its duty of fair representation).  Having chosen to challenge his termination by "filing a grievance pursuant to the negotiated agreement between" DGS and FOP, Mr. Williams gave FOP "broad discretion in its

decision whether and how to pursue [his] grievance against [DGS]."[1] *See Terry*, 494 U.S. at 567-68.

Mr. Williams does not dispute that, per the terms of the collective bargaining agreement, "[o]nly the Union may advance a grievance to arbitration." Instead, he suggests that he has standing because he had the union's backing. He asserts that "[a]fter the Superior Court affirmed PERB's order below, . . . Ms. Ann-Kathryn So [FOP's counsel][2] advised him of his rights to appeal the matter, and provided warning of the timeline to file a notice of appeal." He further states that, because he "did not intend to miss the deadline to timely file his appeal, he filed the Opening Brief on behalf of the Union until further counsel could be obtained"; FOP then "sought representation for Officer Williams on reply," thus "indicat[ing] its express authorization of this appeal."

To begin with, there is nothing in the record indicating what former counsel for FOP said to Mr. Williams prior to withdrawing from the case, or whether FOP

---

[1] Mr. Williams had other choices. He could have forgone the backing of the union and retained personal control over the challenge to DGS's decision to fire him by opting to "fil[e] an appeal with the Office of Employee Appeals" or to "fil[e] a grievance pursuant to Chapter 16 of the DC personnel regulations."

[2] In his brief, Mr. Williams describes the attorney, Ms. So, as "Officer Williams' counsel," but the record reflects that she was in fact counsel "for" FOP "on behalf of" Mr. Williams.

indeed gave its "express authorization of this appeal." "Appellate review is limited to matters appearing in the record before us, and we cannot base our review . . . upon statements of counsel which are unsupported by that record." *Van Durr v. Kator & Scott, Chartered*, 788 A.2d 579, 581 (D.C. 2002) (citation omitted); *see also Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C. 1982) ("The responsibility of perfecting the record remains with appellant and 'cannot be shifted to . . . this court.'" (quoting *Brown v. Plant*, 157 A.2d 289, 291 (D.C. 1960))); D.C. App. R. 16(b) (allowing parties to supplement the record "at any time" by stipulation).

But even if the record did support these factual assertions, Mr. Williams points to no authority that would allow him to "file[] the Opening Brief on behalf of the Union." Instead, the weight of authority indicates that the union must be represented by its counsel. *See Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 731 (D.C. 2000) ("[S]tanding doctrine embraces several judicially self-imposed limits on the exercise . . . of jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . ." (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))); *Shamey v. Hickey*, 433 A.2d 1111, 1113 (D.C. 1981) (corporations must be represented by legal counsel); *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) (requirement of representation "applies equally to all artificial entities," including "corporations, partnerships, or associations"); *see also J.H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587, 595 (D.C. 1973)

(courts "will not permit laymen to appear in court in a representative capacity"). Nor are we persuaded by Mr. Williams's argument that he has standing because he and the union "operate[d] in lock-step," as evidenced by the union "help[ing] Officer Williams secure counsel at every stage of review." Whether or not FOP helped Mr. Williams obtain counsel after he filed his opening brief without the assistance of an attorney has no bearing on whether he had the legal right to appeal in the first place. *See Dillman v. Town of Hooksett*, 898 A.2d 505, 508-09 (N.H. 2006) (rejecting the idea that a union can assign to individual employees the right to arbitrate or the right to seek judicial review of arbitration); *Ruiz v. N. Las Vegas*, 255 P.3d 216, 221 (Nev. 2011) (same).[3]

For the foregoing reasons, we dismiss Mr. Williams's appeal for lack of standing.

*So ordered.*

---

[3] Mr. Williams does not argue that the withdrawal of FOP's attorney prior to filing a notice of appeal with this court constituted a breach of the union's duty of fair representation, and we take no position on that question.